**NORFOLK DREDGING COMPANY, a Virginia Corporation, Plaintiff,**

v.

**RADCLIFF MATERIALS, INC., an Alabama Corporation, Defendant.**

**Civ. A. No. 5524.**

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 24, 1967.

---

Baird, Crenshaw & Ware, Guilford D. Ware, Norfolk, Va., for plaintiff.

Willcox, Savage, Lawrence, Dickson & Spindle, John M. Hollis and Wm. E. Rachels, Jr., Norfolk, Va., for defendant.

### MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In 1962 Norfolk Dredging Company, pursuant to a permit issued by the Army Corps of Engineers, dredged a channel and turning basin to the east of the Government's Craney Island Disposal Area in Hampton Roads. The channel was for the benefit of barges using Norfolk Dredging's rehandler for the deposit of dredged materials in said disposal area.[1]

---

1. Norfolk Dredging claims that these dredged materials were originally removed under contracts with the United States in the execution of various projects for the improvement of navigation in Hampton Roads. However, the 1962 channel was not created pursuant to any Government contract and it was apparently dredged for the benefit of Norfolk Dredging and other companies whose barges were using the disposal area.

The dredging permit, which was issued to Norfolk Dredging on July 17, 1962, contained the following prefatory statement:

"Note.—It is to be understood that this instrument does not give any property rights either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State or local laws or regulations, nor does it obviate the necessity of obtaining *State assent* to the work authorized. *It merely expresses the assent of the Federal Government so far as concerns the public rights of navigation.* (See Cummings v. City of Chicago, 188 U.S. 410, 23 S.Ct. 472, 47 L. Ed. 525)"

The permit then specified the size of the channel to be dredged, the charges to be paid to the Government for use of the disposal area, and certain other conditions pertaining to survey fees, etc.

On October 12, 1962, defendant Radcliff Materials, Inc. entered into a contract with the Virginia Commissioner of Fisheries which authorized Radcliff, in return for a stated royalty, to dredge submerged oyster shells from a designated area in Hampton Roads, part of which area overlapped the area that plaintiff had dredged.

On April 29, 1963, Radcliff obtained a permit from the Army Engineers similar to the one issued plaintiff,[2] authorizing Radcliff to dredge "dead reef oyster shell" in an area to the north and west of Craney Island Disposal Area to a maximum depth of 30 feet. Among other restrictions, this permit provided that "no dredging [is] to be performed within 1000 feet of any channel or within 1200 feet of the levees at Craney Island Disposal Area, or within 3000 feet of the south shore line west of Craney Island Disposal Area. * * *"

On October 9, 1963, a supplement to the above permit was granted Radcliff by the Army Engineers. This supplement extended the area which could be dredged by Radcliff so as to include a sector east of the disposal area. The supplement repeated the prohibition against dredging within 1200 feet of the disposal area levee and added two new restrictions[3] but omitted the previous prohibition against dredging "within 1000 feet of any channel". On March 8, 1965, a second supplement to Radcliff's original dredging permit was issued which added a new area to the east of the disposal area and south of the area covered in the first supplement. This supplement added one additional restriction to the three cited in the previous supplement, but again made no mention of the prohibition in the original permit against dredging within 1000 feet of "any channel".

Defendant received another dredging permit on April 22, 1965, and a supplement thereto on December 8, 1965, which authorized additional dredging for oyster shells east of Craney Island Disposal Area. The last supplement prohibited dredging or anchoring any floating plant within 200 feet of Norfolk Harbor Channel but contained no other specific restrictions.

Acting pursuant to these permits and the contract with the Commissioner of Fisheries, defendant commenced dredging operations in June, 1964, and continued (with occasional interruptions) until December. Dredging operations were renewed in March, 1965, and lasted until June. A third period of dredging began in October, 1965, and terminated in December, 1965.

In the spring or summer of 1966 Norfolk Dredging discovered that its channel had been damaged, allegedly by Radcliff's shell dredging operations in the same area. It gave notice to Radcliff of its findings. Radcliff claims that, upon

2. The permit contained the same "Note" which prefaced Norfolk Dredging's permit.

3. (a) No dredging within 1000 feet of a submerged government pipeline;
(b) No dredging within 1000 feet of the west limit of the Norfolk Harbor Channel.

receiving this notice, it offered to join with plaintiff in a survey of the claimed damage, but that plaintiff proceeded to redredge the channel without regard to defendant's offer. On the other hand, plaintiff contends that it made a demand upon Radcliff to remove the material from the channel and upon the latter's refusal to do so, plaintiff redredged the channel itself. Plaintiff claims damages in the sum of $50,000.00. The matter stands on defendant's motion for summary judgment.

We will assume for purposes of this motion that plaintiff has suffered the damage claimed and that this damage was caused by defendant's shell removal operations. The decisive question is whether plaintiff's damage is *legally compensable;* that is, whether plaintiff has a sufficient property right or interest in the channel to enable it to maintain this suit.

 Plaintiff relies solely upon the dredging permit issued by the Corps of Engineers as furnishing this "property right". It claims that this permit conferred a right of use in the nature of an easement or license upon the permittee. But the language of the permit clearly indicates that it does not pass any "property rights either in real estate or material, or any exclusive privileges"; the purpose of the permit, as stated therein, is merely to safeguard the public right of navigation—a right which is protected by the federal government. Cummings v. City of Chicago, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525 (1903); Cobb v. Lincoln Park Comm'rs, 202 Ill. 427, 67 N.E. 5, 63 L.R.A. 264 (1903). It does not purport to pass any property interest or privilege.

 Indeed, the federal government had no property interest in the harbor bottom which it could convey, since title to the bottom is clearly vested in the Commonwealth of Virginia. Code of Virginia, § 62–1 (1966 Supp.); 43 U.S.C.A. § 1311; United States v. Smoot Sand & Gravel Corp., 248 F.2d 822 (4th Cir. 1957). The state's Commissioner of Fisheries, pursuant to the authority vested in him by § 28.1–94.1 of the Virginia Code (1964 repl. vol.), contracted with Radcliff for the removal of submerged oyster shells from the area in question. Thus the defendant was acting under a contractual right granted by the owner, whereas the plaintiff was not. An easement or license clearly cannot be granted by one having no rights in the servient property.

 Plaintiff also urged at the time of oral argument (without furnishing any factual proof) that the United States, although not the titled owner of the harbor bottom, was the holder of riparian rights [4] and that such rights had been conferred upon Norfolk Dredging Company. It bases this contention upon the government's ownership of nearby Craney Island. Even assuming that the United States did possess these rights, however, they clearly were not conveyed to plaintiff by the dredging permit. Under the Virginia law, riparian rights constitute "property" and such rights are severable from the land to which they were once appurtenant. Thurston v. City of Portsmouth, 205 Va. 909, 140 S.E.2d 678 (1965). We fail to see how plaintiff's dredging permit, excluding as it does the passage of any property interest, could be construed as passing any riparian rights to plaintiff.

 Although plaintiff apparently does not rely on a simple trespass theory as a basis of recovery, we deem it worth-

---

4. In Virginia a landholder's common law riparian rights include the right to enjoy the natural advantage of his location; the right of access to and from navigable waters; the right to build a pier or wharf out to navigable water, subject to state regulation; the right to accretions and alluvium; and the right to make a reasonable use of the water as it flows past the land. Taylor v. Commonwealth, 102 Va. 759, 47 S.E. 875 (1904). By statute these riparian rights have been extended to include the exclusive right to dredge, and to recover damages when this right has been infringed by anyone. Code of Virginia, §§ 62–178 to 62–181 (1950); United States v. Smoot Sand & Gravel Corp., 248 F.2d 822 (4th Cir. 1957).

while to note that this contention would be equally without merit. Assuming that plaintiff was in "possession" of the harbor bottom, such possession alone might entitle it to bring an action against a mere trespasser or one having no greater rights in the bottom than had the plaintiff itself. J. H. Miles & Co. v. McLean Contracting Co., 180 F.2d 789 (4th Cir. 1950); 52 Am.Jur. "Trespass" § 26 (1944). As stated in Prosser, Torts, p. 68 (3d Ed. 1964):

> "As against the fact of possession in the plaintiff, no defendant in a trespass action may set up the right of a third person, *unless he is able to connect himself with that right.*" [Emphasis added.]

In the instant case the defendant clearly did connect itself with the superior rights of the State of Virginia through its contract with the Commissioner of Fisheries.

An examination of the authorities cited by plaintiff in its memorandum reveals that all of them are distinguishable. In every case in which recovery was allowed, plaintiff had either suffered damage to tangible personal property which it owned (such as a pipeline, submerged cable, etc.) or to an intangible property right (such as an easement, license, or riparian right) which had been granted to it by the owner of the affected land. Plaintiff here has neither. It has cited no case, and we have been able to find none, which holds that a permit of the type involved here conveyed any property right or interest to the permittee. It is simply a case of *damnum absque injuria*. Compare Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938).

The fact that the dredging permit initially issued to the defendant contained a prohibition against dredging within 1000 feet of "any channel" does not aid plaintiff's case. In the first place, this restriction was removed in the supplements to the initial permit, which supplements were issued before defendant commenced its operations. But even had this restriction remained in effect, we think it is clear that the power of enforcement of this condition rested with the federal government, unless a private party could show that his property interests were affected by the breach. 33 U.S. C.A. §§ 403, 413; United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). Plaintiff has failed to show any such interest or privilege as would entitle it to maintain this action.

Defendant's motion for summary judgment will be granted.

Present order.