## CIRCUIT COURT OF ALLEGHANY COUNTY

Ethridge E. Burr,
Hazel Burr, et al.

v.

Charles A. Kraft, Jr.

By Judge Duncan M. Byrd, Jr.

March 31, 1993

Subsequent to the hearing held in the above-styled matter on March 12, 1993, on the defendant's demurrer to the plaintiffs' bill of complaint and the conference call of March 19, 1993, the Court believes that a brief opinion letter setting forth the Court's rationale for its decision would be appropriate. This is especially true since the hearing was not recorded. After consideration of the respective memoranda of counsel and oral argument, the Court overruled the defendant's demurrer.

Critical and central to the Court's analysis was its finding that at common law navigable or public waters were those wherein the tide ebbs and flows. 1 Minor on Real Property, 2d ed., p. 83. The Court then concluded that a conveyance by crown grant prior to 1802 where the land lies in the western part of the state such as that section of the Jackson River in question, ownership of the stream beds was included in the grant. *Boerner v. McCallister*, 197 Va. 169, 174 (1955). The Court also concluded that the right of fishery attached as an appurtenance to the ownership of the stream bed in question. Stated another way, the court concluded that the right of fishery was a part of *jus privatum* not the *jus publicum* with respect to private stream beds granted prior to 1802 under non-tidal streams in the western part of the state. *Crenshaw v. Slate River Company*, 6 Rand. (27 Va.) 245 at 260 (1828).

The Court went on to opine that it was of the opinion that fishing rights on the Jackson River in the area in question is one of state law. *Loving v. Alexander*, 745 F.2d 861, 868 (4th Cir. 1984).

Finally, the Court concluded that a subsequent adjudication by the Court in *Loving* that the Jackson River in the area in question was navigable "in fact" under Federal law did not include or affect the right of fishery. Specifically, the Court, citing *Commonwealth v. City of Newport News*, 158 Va. 521, 550-551 (1932), stated that the right of fishery is not an incident of navigation nor part of the *jus publicum* with respect to that section of the Jackson River in question.

## July 14, 1994

On June 3, 1994, a hearing was held in the above-styled matter. At that time, the plaintiffs filed a Memoranda of Law setting forth the plaintiff's "legal theory" of the case. The Court directed that plaintiffs file a motion for partial summary judgment based upon the aforesaid memorandum of law and established a briefing schedule for defendant's reply and plaintiffs' rebuttal. The Court has now received and reviewed the record and arguments of counsel.

Technically speaking, "summary judgment" is not the proper terminology for the motion since apparently factual disputes remain. In reality, the motion is a request for a pre-trial ruling upon portions of the legal issues or "law" applicable to the case.

The Court shares the frustration of counsel that this case has become mired in seemingly endless discovery since the Court's ruling upon defendant's demurrer by order of April 16, 1993.

Following this order, the principal factual inquiry and thus area of discovery centered around the question of whether "the streambed in question is encompassed within a crown grant or a conveyance from the Commonwealth prior to 1802. If it is not, then the Commonwealth would have reserved to the public the title to the streambed under a statute passed in 1802." *Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment*, page 2. The plaintiffs, in their memorandum in support of the motion for partial summary judgment, assert there is no dispute that the streambed in question is encompassed within the crown grant. *Id.*, pp. 3-4. Since the Court is not privy to all discovery in this case, the Court is unable to confirm this assertion. However, assuming proof of this fact and proof of the alleged acts of fishery by the defendant, what other proof of *ownership* must they prove in order for the plaintiffs to prevail in this action? (Bearing in mind that the Court has already ruled that the right of fishery attaches as appurtenant

to the ownership of the streambed as opposed to an incident of navigation *with respect to this section of the Jackson River.*)

As the Plaintiffs state in their Memorandum of Law, "[a]lthough this case does not involve an action in ejectment, it is analogous to an ejectment." *Id.*, p. 3. As the Court stated in *Brunswick Land Corp. v. Perkinson*, 146 Va. 695 (1926):

> It is true the general rule is that a plaintiff in ejectment must recover on the strength of his own title, and when he relies solely on his paper title, must trace either from the Commonwealth or other common grantor . . . .
>
> Of course, when one proves a perfect chain of paper title from its original source, no proof of actual possession at all is required. In such event, the presumption would be all sufficient, and the title would be a complete and perfect title . . . .

*Id.* at 707, 708.

The plaintiffs have clearly taken the position that they are able to provide this type of proof, the same type of proof provided in *Commonwealth v. Morgan*, 225 Va. 517 (1983). However, the Court disagrees with the position of the defendants that the plaintiffs must prove a perfect chain of paper title (unbroken chain of title) in order to prevail in this case. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment*, pp. 5-6.

In *Brunswick Land Corp.*, the Court also stated that:

> it is equally well settled that he [Plaintiff] is not required to do this [prove a perfect chain or paper title] when he shows such a state of facts as will warrant the jury in presuming a grant. *Sulphur Mines Co. v. Thompson*, 93 Va. 293, 25 S.E. 232; *Spriggs v. Jamerson*, 115 Va. 250, 78 S.E. 571.

*Id.* at 707.

This, of course, refers to proof of title by adverse possession. With respect to this method of proof, the Court must agree with the defendant. "Plaintiffs have alleged no facts in their bill of complaint to support a claim for adverse possession." *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment*, p. 7. Accordingly, the Court will give no further consideration to this theory.

However, the *Brunswick* Court also stated:

> And it is also well established that the prior peaceful possession by a plaintiff in ejectment or those under whom he holds, claiming to be the owner in fee, if proven, is prima facie evidence of ownership and seisin and is sufficient to authorize recovery unless the defendant shows a better title to himself or another.

*Id.* at 707. Under this theory:

> a title prima facie is shown by a grant from some one who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by anyone who, at the time the objection is made, appears to be a mere stranger to the title, such a prima facie title would seem quite sufficient. To require more against such an objector would require every one to prove a perfect chain of title as against every stranger making any kind of a claim. This the law does not require. If the objector has a better or stronger title than the prima facie title proved, then he must show it, and until he does, the prima facie title prevails. See *Cottrell v. Pickering*, 32 Utah, 62, 88, page 696, 20 L.R.A. (N.S.) 1100, and note; *Dodge v. Irvington Land Co.*, 158 Ala. 91, 48 So. 383, 22 L.R.A. (N.S.) 1100, and note.

*Id.* at 708.

This theory is consistent and analogous with the general rule applicable to trespass as contained in 75 Am. Jur. 2d, *Trespass*, § 39:

> Actual possession of real estate, without title or with a defective title, is always sufficient to sustain an action of trespass to real property against one having no superior right.
>
> Generally, title on the part of the plaintiff is not necessary to maintain an action for trespass to real property where the evidence shows a bona fide possession under claim or color of right
>
> . . . .

*Id.*

Here the analogy between ejectment and trespass ends. In a trespass action, as opposed to an ejectment action, a defendant may not defeat recovery by showing a better title in some third person, *unless he is able to connect himself with that right* or better title. *Norfolk Dredging Co. v. Radcliff Materials, Inc.*, 264 F. Supp. 399 (E.D. Va. 1967). See also Prosser, *Torts*, p. 68 (3d ed. 1964).

Finally:

In contrast to the rule in actions of trespass grounded only upon actual possession by the plaintiff, where one enters into possession of a part of a tract of land under color of title to the whole tract, his entry under such circumstances operates as a possession of the entire premises described in his deed of conveyance and is sufficient to maintain trespass for entry on any part of it.

75 Am. Jur. 2d, *Trespass*, § 40.

In the Court's view, the legal principles as expressed in this opinion constitute the law applicable to this case.

Where does this leave the posture of the discovery in this case? Again, since the Court is not privy to much of the discovery, this is a question that only counsel can answer. Frankly, if the plaintiffs continued to proceed upon the "perfect legal title theory," their evidence of "breaks in the chain of title"/"ancient defects" are clearly relevant. If plaintiffs abandon this theory and proceed upon the "prima facie ownership" theory as outlined by the Court, then "discovery" *would* be substantially reduced and *should* be substantially complete.

## May 12, 1995

On April 13, 1995, an *ore tenus* hearing was held in the above-styled matter. At the conclusion of the evidence and arguments of counsel, the defendant sought leave to submit additional memoranda in support of title issues addressed during motions to strike and closing argument. The defendant's memoranda were filed on April 27, 1995. On May 5, 1995, the plaintiffs filed their reply to defendant's memoranda. The Court has now had an opportunity to review the totality of the evidence and arguments/authorities of the parties.

### Procedural Issues

At the beginning of the hearing, the plaintiff moved to designate and introduce into evidence, over the objection of the defendant, portions of defendant Kraft's deposition taken October 5, 1994. Despite the fact that this procedure is routinely done in actions at law, for reasons which still remain a mystery to the Court, such a procedure in a suit in equity in an *ore tenus* hearing apparently violate Rule 4:7(a)(1) of the Rules of the Supreme Court of Virginia. Therefore, despite the fact that the Court has erroneously permitted this evidence to be made a part of the record, the Court rejects this evidence and will not consider same for purposes of this

hearing. Instead, the Court will consider only the testimony of the Defendant, Charles Kraft, at hearing.

The Defendant also objected to certain portions of the plaintiff's expert Congleton's deposition upon the grounds that they are in response to "leading questions." In the Court's opinion, these objections have been waived in accordance with the provisions of Rule 4:7(d)(3)(B) of the Rules of the Supreme Court.

### Issues Previously Decided

By letter opinion of March 31, 1993, which was memorialized by the Court's Order of April 16, 1993, the Court clarifying its earlier ruling of March 12, 1993, opined as follows:

> Critical and central to the Court's analysis was its finding that at common law, navigable or public waters were those wherein the tide ebbs and flows. 1 Minor on Real Property, 2d ed., p. 83. The Court then concluded that a conveyance by crown grant prior to 1802 where the land lies in the western part of the state such as that section of the Jackson River in question, ownership of the stream beds was included in the grant. *Boerner v. McCallister,* 197 Va. 169 at 174 (1955). The Court also concluded that the right of fishery attached as an appurtenance to the ownership of the stream bed in question. Stated another way, the Court concluded that the right of fishery was a part of jus privatum, not the jus publicum with respect to private stream beds granted prior to 1802 under non-tidal streams in the western part of the state. *Crenshaw v. Slate River Company,* 6 Rand. (27 Va.) 245 at 260 (1828).
>
> The Court went on to opine that it was of the opinion that fishing rights on the Jackson River in the area in question is one of state law. *Loving v. Alexander,* 745 F.2d 861 (4th Cir. 1984) at 868.
>
> Finally, the Court concluded that a subsequent adjudication by the Court in *Loving* that the Jackson River in the area in question was navigable "in fact" under Federal law did not include or affect that right of fishery. Specifically, the Court, citing *Commonwealth v. City of Newport News,* 158 Va. 521 (1932) at 550-551, stated that the right of fishery is not an incident of navigation nor part of the jus publicum with respect to that section of the Jackson River in question.

*Id.*

By subsequent opinion letter of July 14, 1994, this Court, citing the case of *Brunswick Land Corp. v. Perkinson*, 146 Va. 695 at 707, held:

> And it is also well established that the prior peaceful possession by a plaintiff in ejectment of those under whom he holds, claiming to be the owner in fee, if proven, is prima facie evidence of ownership and seisin and is sufficient to authorize recovery unless the defendant shows a better title to himself or another.

*Id.* at 707. Under this theory:

> a title prima facie is shown by a grant from someone who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by anyone who, at the time the objection is made, appears to be a mere stranger to the title, such a prima facie title would seem quite sufficient. To require more against such an objector would require every one to prove a perfect chain of title as against every stranger making any kind of a claim. This the law does not require. If the objector has a better or stronger title than the prima facie title proven, then he must show it, and until he does, the prima facie title prevails. See *Cottrell v. Pickering*, 32 Utah 62, 88, p. 696, 20 L.R.A. (N.S.) 404, and note; *Dodge v. Irvington Land Co.*, 158 Ala. 91, 48 So. 383, 22 L.R.A. (N.S.) 1100, and note.

*Id.* at 708. This theory is consistent and analogous with the general rule applicable to trespass as contained in 75 Am. Jur. 2d, *Trespass*, § 39:

> Actual possession of real estate, without title or with a defective title, is always sufficient to sustain an action of trespass to real property against one having no superior right.
>
> Generally, title on the part of the plaintiff is not necessary to maintain an action for trespass to real property where the evidence shows a bona fide possession under claim or color of right
>
> . . . .
>
> Here the analogy between ejectment and trespass ends. In a trespass action, as opposed to an ejectment action, a defendant may not defeat recovery by showing a better title in some third person, *unless he is able to connect himself with that right* or better title. *Norfolk Dredging Company v. Radcliff Materials,*

*Inc.,* 264 F. Supp. 399 (1967). See also Prosser, *Torts,* p. 68 (3d ed. 1964).

*Id.*

## Finding

Has the plaintiff met his burden of proof under the aforesaid prima facie theory? In this case, the defendant is clearly a mere stranger to the plaintiff's title. It is defendant's position that because the Jackson River in the area in question is a navigable waterway that he has a right to fish it. Viewing the totality of the evidence in light of the aforesaid principles, the Court concludes that the plaintiff has established a prima facie title sufficient to sustain an action in trespass against the defendant. The Court also concludes that the evidence is sufficient to find that the defendant will continue to trespass by fishing at the locations in issue.

Do the actions and threatened actions of the defendant warrant injunctive relief? This issue was addressed by our Supreme Court in the case of *Boerner v. McCallister,* 197 Va. 169 (1955), the facts of which arose in the same general area of the Jackson River in Alleghany County. In this case, the Court concluded:

> As a general rule, where an injury committed by one against another is constantly repeated so that complainant's remedy at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction, the prevention of a multiplicity of actions at law being one of the special grounds of equity jurisdiction. 43 C.J.S., *Injunctions,* [Section] 24(a), p. 449. This is so, even though each individual act of trespass is in itself trivial, or the damage is trifling, nominal or insubstantial, and despite the fact that no single trespass causes irreparable injury. The injury is deemed irreparable and the owner protected in the enjoyment of his property whether such be sentimental or pecuniary. 43 C.J.S., *Injunctions* [Section] 64(a), pp. 526, 527. See also *Long's Baggage Transfer Co. v. Burford,* 144 Va. 339, 132 S.E. 355; *Mears v. Colonial Beach,* 166 Va. 278, 184 S.E. 175.

*Id.* at 171-172.

The Court approving the Circuit Court's permanent injunction against the fishing on the property in question stated:

> It was evident that Boerner defiantly intended to continue to fish in the waters of the river claimed by McCallister, contending that McCallister had no right to prohibit him from doing so.

*Id.* at 173.

The facts in this case warrant a similar conclusion and similar relief. The relief prayed for by the plaintiff should be granted.