## Wytheville

### Saunders v. Terry

#### June 11, 1914.

1. Judgments—*Collateral Attack—Presumption.*—The strongest presumptions are indulged in favor of the correctness of the judgments and decrees of courts of general jurisdictions.  They cannot be collaterally assailed in other actions provided the court had jurisdiction of that class of cases.

2. Judgments—*Parties—Presumption—Suit to Sell Decedent's Land— —Personal Representative as Party.*—Where a decedent's lands were sold for the payment of his debts under proceedings in a suit to which his personal representative was not a party, it will be presumed, after the lapse of many years and the loss of the papers in the suit, that there was no personal estate to be subjected.

3. Judgments—*Decree to Sell Land—Word "Sell" Omitted.*—Although a certified copy of a decree for the sale of land does not contain the word "sell," it is sufficient if the decree when read as a whole, contains authority to sell the land, especially where subsequent decrees show that the sale was made and reported to and confirmed by the court.

4. Deeds—*Commissioner's Deed—Recitals—Code, Section 3333-a.*—The deed in question, in the case in judgment, contains all the essential recitals to bring it directly within the purview of section 3333-a of the Code (1904) and hence is *prima facie* evidence that the sale therein referred to was regularly made, and that the other recitals therein are true.

5. Adverse Possession—*Possession by Co-Tenant—Presumption— Ouster.*—The possession of one co-tenant is presumed to be the possession of all until the contrary is shown by such hostile acts on the part of the tenant in possession as would amount to an ouster of the co-tenants.  The possession of one tenant in common, though exclusive, does not amount to a disseisin of the co-tenant, nor does the receipt of profits and the payment of taxes amount to an ouster of such co-tenant.  A silent possession, unaccompanied by acts amounting to an ouster, or giv-

ing notice of an adverse claim cannot be construed into adverse possession.

Appeal from a decree of the Corporation Court of the· city of Lynchburg. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Guthrie & DeJarnette,* for the appellant.

*Booker & McKinney* and *James S. Easley,* for the appellee.

Cardwell, J., delivered the opinion of the court.

This appeal is from a decree entered by the Corporation Court of the city of Lynchburg in a chancery cause removed to that court from the Circuit Court of Halifax county, instituted by appellee against appellant, the purpose of which was to have partition of a tract of 100 acres of land situated in Halifax county, the bill alleging that appellee, plaintiff below, owned one moiety of the land and appellant, defendant below, the remaining moiety.

The material facts in the case may be summarized as follows: John Vaughan was the owner of the land in question by deed conveying the same to him from one Burton Owen in 1858, and upon the death 'of John Vaughan, which occurred many years ago, the land descended in equal moieties to his two daughters, Jane Vaughan and Sallie Vaughan. Jane Vaughan died over forty years prior to the institution of this suit, leaving surviving her an infant daughter, Emma Vaughan, her sole heir. In the year 1878 a creditors' suit was instituted in the Circuit Court of Halifax county by E. Barks-

dale, Jr., against Emma Vaughan to subject the estate of
her deceased mother to the payment of her debts.  The
original papers in this suit having been lost, there was
only to be found copies of decrees therein and the rules
and memoranda taken and made in the office of the clerk.
It does not appear that the personal representative of
Jane Vaughan was made a party to that suit, but it does
appear that the court ordered a commissioner to take an
account of the real and personal estate owned by Jane
Vaughan at her death and an account of debts owing by
her, etc.  It also appears that a report, in response to
this order of reference, was filed and confirmed by a
subsequent   decree,   and   the   land—that   is,   Jane
Vaughan's one-half undivided interest in the 100 acres,
was ordered sold, which was done and the sale by a still
later decree approved and confirmed, and a deed ordered
to be made by C. C. Carrington, special commissioner,
conveying the land to W. R. Barksdale, which deed was
accordingly made and bears date August 26, 1886.  W. R.
Barksdale, by deed dated August 21, 1909, conveyed his
undivided one-half interest in the 100 acres of land so
acquired by him to appellee, Martha A. Terry.

Sallie Vaughan died about the year 1908, leaving a
daughter, Susan Hancock, her sole surviving heir, and
to whom descended her mother's undivided one-half in-
terest in said 100 acre tract of land, and this one-half
interest Susan Hancock, by deed dated August 31, 1912,
conveyed to the appellant, W. R. Saunders.

Appellant, after purchasing the interest of Susan Han-
cock and having actual knowledge of the deed from W.
R. Barksdale to appellee and of the claim she made to a ·
one-half interest in the land, began negotiations with one
Jennie Haythe, an inmate of the county almshouse, who
was the only child and heir of Emma Vaughan, deceased,
and obtained from her a deed purporting to convey to

him a one-half undivided interest in the land in question, which deed bears date September 21, 1912, and, according to the proof in this case, the only consideration for this conveyance was a promise to pay the grantor, Jennie Haythe, $25.00 if it should turn out that she had a good title to the interest in the land her deed purported to convey.

The bill in this cause concedes that appellant owns one-half of the land in question by virtue of the deed from Susan Hancock to him, while the answer of appellant thereto sets up that appellee has no title whatever to an interest in the land for the following reasons:

"(1) Because to the general creditors' suit brought by E. Barksdale, Jr., to ascertain the indebtedness of Jane Vaughan, deceased, and to subject both her personal and real estate to the payment of her debts, her personal representative was not made a party;.

"(2) Because no order of the court to sell the land of Jane Vaughan was made;

"(3) Because the deed from C. C. Carrington, special commissioner, to Wm. R. Barksdale, of August 26, 1886, was without authority of the court and conveyed no title;

"(4) Because the right of Wm. R. Barksdale, if he ever had any, was barred by the statute of limitations long before his deed of August 21, 1909, by which he undertook to convey his interest to appellee;

"(5) Because plaintiff (appellee) having acquiesced in the continuous adverse possession and claim of title of appellant, his immediate grantors and those through whom they claim for more than the statutory period, she was estopped from acquiring title adverse to them from a stranger; the grantors of appellant holding title to said land and being in possession of the same at the time of their respective conveyances to appellant, vested him with the complete title to said land.   .   .   ."

The court below having overruled all of the contentions of appellant and decreed partition of the land between him and appellee as equal owners thereof, they are made the basis of appellant's several assignments of error in his petition for this appeal.

Taking up these assignments of error in their order, the first presents the question, whether or not the decree of the court in the suit of *E. Barksdale, Jr.,* v. *Emma Vaughan* authorizing the sale of Jane Vaughan's interest in the land in question was void by reason of the fact that a personal representative of her estate was not made a party thereto.

The first decree in that suit was entered twenty-eight years before the institution of this suit, and the only person whose interest could have been affected by the former suit was the infant defendant thereto, Emma Vaughan, who was properly before the court and represented by her guardian *ad litem,* she being the sole heir at law and distributee of whatever estate, real or personal that was owned by her mother at her death. A commissioner appointed by the court made a report of what property Jane Vaughan, deceased, left which was liable to the payment of her debts, and just what that report contained cannot be ascertained as it was lost along with the other papers in the cause, but the presumption necessarily is that there was no personal estate out of which the debts of Jane Vaughan could have been paid, for otherwise the court could not, and doubtless would not, have decreed a sale of her land until her personal estate was exhausted. The authorities are uniform in maintaining the rule that the strongest presumptions are to be indulged in favor of the correctness of the judgments and decrees of a court of record. The principle is clearly stated in the early case of *Fisher* v. *Bassett,* 9 Leigh (36 Va.) 131, thus: "The county court is

a court of record and its judgments or sentences cannot be questioned collaterally in other actions provided it has jurisdiction of the cause. And it is to be understood as having reference to jurisdiction over the subject matter; for though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extends over that class of cases the judgment cannot be questioned.''

In *Robinett* v. *Mitchell,* 101 Va. 762, 45 S. E. 287, 99 Am. St. Rep. 928, the opinion says: ''It appears from the agreed facts that the decree of December 2, 1886, was entered against James Robinett after his death, and appellants insist that it was therefore void and should have been so declared by the circuit court. While the decisions are irreconcilably in conflict as to the effect of a judgment rendered for or against a party after his death, the decided weight of authority seems to be that where a court of general jurisdiction renders such judgment it is not for that reason void.

''The judgment, though erroneous and voidable, if assailed in a direct proceeding for that purpose is effective unless and until set aside and may not be collaterally attacked.'' Citing among other authorities *Lancaster* v. *Wilson,* 27 Gratt. (68 Va.) 624, where the court, speaking with respect to collateral attacks on judgments, said: ''It is not merely an arbitrary rule of law, established by the courts, but it is a doctrine founded upon reason and the soundest principles of public policy. It is one which has been adopted in the interest of the peace of society and the permanent security of titles.'' *Rhea* v. *Shields,* 103 Va. 305, 49 S. E. 70.

The rule applied in the cases just cited applies with greater force where, as in the case under consideration, the presumption to be necessarily indulged upon the facts appearing in the record is that the court before

decreeing the sale of decedent's real estate for the payment of his debts, first ascertained that the decedent left no personal estate, for if there was no personal estate to be represented, the reason for the rule, that where the personal estate of a deceased person may be affected by a decree, his personal representative must be a party to the proceeding, ceases and in such a case the heir or heirs to whom the real estate descended have suffered no injury.

The second assignment of error is also without merit. Its sole ground is that the sale of the land in question by the court, in the suit of *Barksdale* v. *Emma Vaughan,* was void because the decree of the April term, 1884 under which the sale was made, contained no authority for the sale. It does appear that the certified copy of this decree (the original having been lost along with all other papers in the cause), filed as an exhibit in this cause, does not contain the word "sell," and whether the omission of this word was a typograhical error in making the copy from the original used as an exhibit in this cause, or in copying the record for this appeal, cannot be ascertained; but be that as it may, when the decree is read as a whole, it contains authority to sell the land. Not only so, but by a later decree, a copy of which is also in this cause exhibited and is not disputed, it does appear that the sale was made, reported to the court and confirmed.

Under appellant's third assignment of error the contention is made that the deed from Carrington, special commissioner, to W. R. Barksdale is no evidence of the recitals therein; that the decree· ordering the execution of this deed does not contain a description of the lands to be conveyed, except by reference to the bill which is lost, and, therefore, the deed carries no title to the grantee. Suffice it to say that the deed in question contains all the

essential recitals to bring it directly within the purview and control of the statute, now section 3333-a of the Code of 1904, which is as follows:

"Whenever the title to any property, claimed under a conveyance or deed, heretofore or hereafter made, purporting to be in execution of a sale under a deed, deed of trust, mortgage, or any judicial proceeding, according to the terms of said deed, deed of trust, mortgage, or judicial proceedings, is attacked or called into question in any manner, if it shall appear from the face of such conveyance or deed that such sale has been regularly made in accordance with the terms of such deed, deed of trust, or mortgage, or judicial proceedings, such deed of conveyance shall be *prima facie* evidence that such sale was regularly made, and that other recitals in such deed or conveyance are true."

The remaining assignments of error present, practically, the same question, viz., whether appellee and W. R. Barksdale, under whom she claims, have lost all right, if any they ever had, to an undivided half interest in the land in question by the adverse possession thereof of appellant, and those under whom he claims, for the necessary period of the statute of limitations.

There is nothing appearing in the record upon which the contention of appellant that by virtue of the adverse possession of Jennie Haythe and her mother, Emma Vaughan, of the land in question his title thereto is complete and indisputable, could be maintained, unless it be upon the adverse possession of Jennie Haythe. At the time of the conveyance by Carrington, commissioner, to W. R. Barksdale of the undivided half interest of Jane Vaughan therein, Sallie Vaughan, who was theretofore in possession of the land as co-tenant thereof with Jane Vaughan, remained so until her death in 1908. It appears from the evidence introduced by appellant that

after the death of Sallie Vaughan her daughter, Susan Hancock, remained in possession of the land until the conveyance from W. R. Barksdale of his half interest therein to appellee, whose husband at that time went upon the land and farmed it, paying Susan Hancock rent for her one-half interest in the land. Upon his conveyance from Carrington, commissioner, W. R. Barksdale became a co-tenant of the whole tract of land with Sallie Vaughan, each owning a half interest therein.

It is well settled by the decisions of this court that the possession of one co-tenant is presumed to be the possession of both until the contrary is shown by such hostile acts on the part of the tenant in possession as would amount to an ouster of the co-tenant. The statute (section 2736, Code 1904) in dealing with the action of ejectment provides that if the action be by one or more tenants in common, joint tenants or co-parceners, against their co-tenants, the plaintiff shall be bound to prove actual ouster or some act amounting to total denial of plaintiff's right as co-tenant.

In *Lagorio* v. *Dozier,* 91 Va. 492, 22 S. E. 239, the facts were very similar to the facts in the case now before us, and it was there held that "the possession of one tenant in common, though exclusive does not amount to a disseisin of the co-tenant, nor does the receipt of profits and the payment of taxes amount to an ouster of such co-tenant. A silent possession, unaccompanied by acts amounting to an ouster, or giving notice of an adverse claim, cannot be construed into adverse possession," the opinion of the court saying: "The agreed facts in the case show that Clement Hill was in actual, open, continuous, exclusive and notorious possession of the land from the time of Mahala's death until he conveyed it to A. Lagorio; during that time he received the profits and paid taxes; that A. Lagorio, and those claiming

under him have been in actual, open, continuous, exclusive and notorious possession from that time until the present. . . . Upon the death of Mahala Hill, there having been no issue born to her marriage with Clement Hill, her interest in this land vested in her son as her sole heir, and he became tenant in common with Clement Hill. With respect to persons so situated it is well settled that the possession of one, though exclusive, does not amount to the disseisin of the co-tenant . ."

In the case here the possession of Sallie Vaughan and Susan Hancock, under whom appellant claims, could not be held to have disseized W. R. Barksdale, as the evidence utterly fails to disclose any notice to him of such hostile acts on the part of either of the tenants in possession as would amount to an ouster of him as a co-tenant, or of any notice of such intention or of acts which would imply notice.

As to appellant's contention that the possession of Jennie Haythe was such as to disseize W. R. Barksdale of any interest he may have had in the land, the evidence is still more barren, if possible, of proof to show any possession or any act of ownership, or of any intention whatever on the part of Jennie Haythe to claim an interest in the land adversely. On the contrary, the proof is that her mother, Emma Vaughan, had been dead from about the time of the deed from Carrington, commissioner, to W. R. Barksdale, and that she, Jennie Haythe, never claimed an interest in the land; that she left the land when very small and lived with two different persons for some time, and then was with her aunt, Sallie Vaughan, on the land in question, from which place she went to the almshouse January 31, 1900, and has never been on the land since that time except for a visit to her aunt of a week or two duration. The superintendent of the almshouse at the time Jennie Haythe was received

there as an inmate testifies in this case that she was asked as to what property she owned, and her statement was that she owned no land, which statement was afterwards, but not until about the time of her dealings with appellant resulting in her deed to him mentioned above, modified; she then saying that she 'did not own any land that she knew of.'

Upon the whole decree complained of is right and is, therefore, affirmed.

*Affirmed.*