# Wytheville.

## HILL, ET AL., v. BELL, ET AL.

### June 15, 1922.

1. ADVERSE POSSESSION—*Wild and Uncultivated Land—Necessity of Actual Possession.*—In the instant case, a proceeding to ascertain the true boundary line between the lands of plaintiff and defendants, both parties claimed title by adverse possession to the land in dispute, most of which had never been cultivated and was "grown up." Neither party had actual possession of the land in controversy, but each claimed title to the extent of his boundary wherever that might be.

    *Held:* That the claim of title by adverse possession failed for want of proof, as to both plaintiff and defendants.

2. BOUNDARIES—*Verdict—Alteration of Verdict—Judgment of Appellate Court.*—In the instant case, a proceeding to ascertain the true boundary line between the lands of plaintiff and defendants, the jury returned a verdict for plaintiff, and agreed on the survey of the county surveyor. Plaintiff objected to the verdict as being uncertain and indefinite, and the court directed the jury to retire and find a verdict in proper form. Whereupon one of the jurors asked if the jury had the right to find any other line, and the court verbally instructed the jury that they were not obliged to follow exactly the lines claimed by the plaintiff or the defendants, to which direction neither party excepted. The jury thereupon rendered a verdict in favor of the plaintiff, but fixed another line. The original verdict was abundantly sustained by the evidence. The corrected verdict took away from the plaintiff a part of the land given to him by the original verdict and also gave him a small triangular shaped piece of land which the original verdict had given to the defendants. Counsel for plaintiff intimated that they were willing to sustain the loss imposed by the corrected verdict, and would enter a disclaimer as to the small triangular piece of land given by the original verdict to the defendants.

    *Held:* That defendants could not be hurt by the acceptance of the amended verdict together with the suggested disclaimer. The case was therefore remanded to the lower court with direction to put the plaintiff upon terms to disclaim of record any right, title, or interest to this small triangular piece of land, or else submit to a new trial.

Error to a judgment of the Circuit Court of Campbell county in a proceeding to ascertain boundary lines under section 5490 of the Code of 1919. Judgment for plaintiff. Defendants assign error.

*Remanded.*

The opinion states the case.

*James H. Guthrie,* for the plaintiff in error.

*Robert A. Russell* and *W. M. Murrell,* for the defendants in error.

BURKS, J., delivered the opinion of the court.

This is a proceeding under section 5490 of the Code to ascertain the true boundary line between the lands of the plaintiff and the defendants. There was a verdict and judgment for the plaintiff, and the defendants assign error.

The plaintiff (Bell) claimed in his notice that the true boundary line was as follows: "Beginning at a point on Seneca creek, just below the mouth of Pheasant branch, thence in a southerly and southwesterly direction along an old fence row to a point on the Marysville and Long Island road near the Island Gate." The plaintiff claimed title both by his title papers and by adverse possession for the statutory period. The defendants, following the provisions of the statute, filed no plea, but filed a statement of their grounds of defense in writing. These grounds were (1) that the old fence row was not the line between the plaintiff and the defendant; (2) that the plaintiff has not had adverse possession for the statutory

period, or any legal possession, but on the contrary the defendants have had such possession; and (3) that the true line is that shown by the survey of the land made by Rufus A. Murrell about the year 1875, and that defendants and those under whom they claim have had adverse possession for a long time prior to that time, "and since then to the present time." Upon these pleadings the parties went to trial; the statute providing that the parties should be deemed to be at issue upon filing the grounds of defense, and without any replication.

In vacation, and before the issue was made up, the judge of the trial court, on the motion of the petitioner, directed the county surveyor of Campbell county to "make such surveys in this boundary controversy as he may deem necessary, and within reasonable limits, such as may be required by any party in interest; that said survey be made after reasonable written notice to the above mentioned parties both petitioner and defendants, and does further direct the said surveyor to report his acts hereunder to the court in this cause by filing plat and report before the September term, 1920, in the clerk's office of this court." This survey was made and reported to the court pursuant to the vacation order aforesaid.

[1] The quantity of land in dispute is 19½ acres, which is described by the plaintiff in his testimony, as follows: "Most of the land in dispute is grown up and there is no sign that any of it has ever been cultivated, except what I have cultivated; along the creek it is mostly hills and bluffs, only some very small flats." Neither party had actual possession of the land in controversy, but each claimed title to the extent of his boundary wherever that might be. In

The claim of title by adverse possession failed for

want of proof, as to both plaintiff and defendants. The lands of both parties abutted on Seneca creek, into which there flowed two branches 1,179 feet apart at the creek, and it became all important to determine which of the two was known as "Pheasant branch," as that was one of the calls in the Murrell survey. Upon this subject the testimony was very conflicting, with probably the preponderance in favor of what is called the upper branch. The surveyor, therefore, could not use either as a fixed point, but had to start at some other point about which there was no dispute. Both parties accepted the Murrell survey as correct, and that is about the only question in the case upon which all parties agreed. On nearly all other questions the witnesses were far apart. This Murrell survey is also spoken of as the "Bruce Island Plat." The two are the same.

In order to get an undisputed point of beginning, the surveyor went upon another tract, and, using the Bruce Island Plat, took as his first station the point where Rocky branch flows into Seneca creek, and ran the line in accordance with that plat, thence up the meanderings of that branch to a point near its source, and thence still with the courses of said Bruce Island Plat to the Marysville road, but the distance given in said plat fell 442 feet short of said road; thence crossing the road near Island Gate and continuing the same course and distance given on said plat to a station, and thence with the course given on said plat to Seneca creek, but the distance given in the last call fell short of reaching the creek by 330 feet. Of this latter shortage, Farmer, a surveyor who testified for the defendant, says, this "330 feet is one 'out' by a two pole chain, the kind that was formerly in general use by surveyors." It will be observed that

in the above survey, the county surveyor in every instance followed the course given by the Bruce Island Plat, after making proper changes for variation in the magnetic needle, but in two instances the distances fell short. The lines thus run brought the survey to an end at Seneca creek at the point where the lower branch empties into it. In his report to the ·court, the surveyor says that this survey "was made by the Bruce Island Plat under which C. Booker Bell holds title." In other words, this is the line as claimed by Bell. The surveyor also ran three other lines which are shown on his plat. They are designated, respectively, "Line to which A. C. Davis has held possession before the survey," "Line called for in deed from Hill & Nichols to A. C. Davis," and "Bruce Island Plat run from birch just below mouth of Upper Branch." A. C. Davis is the defendant in possession of the land in controversy.

The defendants offered in evidence E. R. Farmer, a surveyor from South Boston, and certain plats prepared by him to show that the "Pheasant branch" mentioned in the record was the upper branch and not the lower. But he took as his starting point the rock corner at the "Island Gate" on the Marysville road, because he says the plaintiff had told him that was his corner. He says, "Mr. Bell told me that was his corner, and I took it to be the location of the stump in the Upton line on Marysville road called for in the notes of Rufus A. Murrell's survey, but the Murrell notes don't fit to the Island Gate, and I changed the courses to agree with the distances, which is the usual method of adjusting discrepancies of that character in surveys." The plaintiff testified, "I don't know anything about a corner stump on the Marysville road. Never saw a line stump there: there is a

hole in the ground near the Island Gate in which there is a rock, but I do not know that it is a stump hole, or the line or corner called for in the deeds." Farmer also assigned other reasons for thinking that the upper branch was "Pheasant branch," and there were a number of other witnesses who testified that the upper branch was "Pheasant branch."

[2] With all this evidence before them, the jury brought in the following verdict: "We, the jury, find for the plaintiff, and agree on the survey of Fred Kabler, September 10, 1920," which is the survey of the county surveyor hereinbefore referred to bearing the date last mentioned.

The plaintiff objected to the verdict "as being uncertain and indefinite and not in proper form," and thereupon the court directed the jury to retire to their room and find a verdict in proper form. Whereupon one of the jurors asked the court if the jury had the right to find any other line as the true line, and the court gave to the jury the following verbal instruction: "You are not obliged to follow exactly the lines claimed by the plaintiff or the defendant, but should find such verdict and fix such line as the law and the evidence establishes as the true line." To which direction neither party excepted. Then the jury again retired to their room, and some time thereafter returned into court and rendered the following verdict, to-wit: "We, the jury, find for the plaintiffs, and ascertain the true boundary line between the plaintiff C. Booker Bell and the defendants, the coterminous land owners, to be as follows: Beginning at the Island Gate, thence a straight line to 'hollow maple' on Seneca creek, as shown on the plat of Fred Kabler, filed with his report in this case."

The original verdict, though general, fixed as the

true boundary line between the litigants the line marked on the Kabler survey, "Bruce Island plat run from mouth of Rocky branch." This finding was abundantly sustained by the evidence. The corrected verdict, however, giving a straight line from Island Gate to hollow maple, while sustained by the testimony of the plaintiff and one of his witnesses, is not supported by the title papers. The verdict, as corrected and accepted by the court, took away from the plaintiff a part of the land given to him by the original verdict and also gave him a small triangular shaped piece of land which the original verdict had given to the defendants. During the oral argument, counsel for the plaintiff (Bell) stated that they were willing to sustain the loss imposed by the corrected verdict, and would enter a disclaimer as to the small triangular piece of land lying east of the straight line fixed by the corrected verdict which was given to the defendants by the original verdict.

If the original verdict was correct as to the location of the dividing line (and we cannot say that it was not), the defendants cannot be hurt by the acceptance of the amended verdict and the disclaimer aforesaid, for in this way they get more than they would have gotten by the original verdict if it had specifically located the line found by the jury. The jury had the benefit of the testimony and drawings of the surveyors, one presenting the view of each side of the controversy, as well as the testimony of a number of witnesses, and it is not likely that any more light would be thrown on the subject by any further surveys. Their finding under these circumstances should not be disturbed if the rights of the parties will not be violated thereby. The plaintiff, as we have seen, has signified his willingness to accept the verdict and make the disclaimer

aforesaid, and this action on his part will not be prejudicial to the rights of the defendants as ascertained by the first verdict. The case, therefore, will be remanded to the Circuit Court of Campbell county with direction to put the plaintiff upon terms to disclaim of record any right, title, interest, or estate, in and to so much of the land shown by the Kabler line, run from the mouth of Rocky branch, as lies east of the straight line fixed by the verdict of the jury, or else submit to a new trial. *Fry* v. *Stowers,* 98 Va. 417, 36 S. E. 482. If the plaintiff shall make the disclaimer, the circuit court shall cause the true boundary line as fixed by the verdict of the jury and the disclaimer aforesaid, to be clearly and distinctly marked before entering judgment, and then enter up judgment accordingly; and upon entering judgment it shall further direct such record thereof to be made as appears to be proper. If the plaintiff declines or fails to make such disclaimer, the said circuit court shall award the defendants a new trial.

There are two minor assignments of error to rulings of the trial court on the admissibility of evidence. We are of the opinion that the defendants were not prejudiced by either of them, and that they are not of sufficient general interest to warrant discussion.

The defendants in error will be awarded their costs in this court as the parties substantially prevailing.

*Remanded.*