# Richmond.

## BRUNSWICK LAND CORPORATION V. C. H. PERKINSON,
### ET AL.

April 30, 1926.

1. BOUNDARIES—*Proceeding Under Section 5490 of the Code of 1919—
   Principles of Law Applicable the Same as in an Action of Ejectment.*—
   Where in a proceeding under the statute (section 5490 of the Code
   of 1919) to establish a boundary line the title and right of possession
   of the coterminous owners is brought into dispute by the pleadings,
   the same principles of law are applicable as would be applicable
   to the same subject in an action of ejectment.

2. BOUNDARIES—*Section 5490 of the Code of 1919—Defendant not Claiming
   Title or Possession to Land Within Survey Set Forth in Plaintiff's
   Title Papers—Location of Survey on the Ground—Question for Jury—
   Case at Bar.*—In the instant case, a proceeding under the statute
   (section 5490 of the Code of 1919) to ascertain a boundary line,
   plaintiff in his petition did not claim title to any certain location
   on the ground. It only claimed such land as was contained within
   the survey set forth in its title papers, and asked that the boundary
   line between defendant's and its own be located and laid out accord-
   ingly. On the other hand, defendant, in his grounds of defense,
   did not claim title to or possession of any part of the land within
   plaintiff's survey, nor deny that the survey gave the true boundary,
   or that it does not extend to any certain location on the ground,
   or set up any other boundary. Defendant merely denied that
   plaintiff had possession of or a valid legal title to any of the land
   claimed in its petition. Both defendant and plaintiff asked the
   court to appoint surveyors to establish the boundary line between
   the two tracts.

   *Held:* That the only question presented for determination in the
   case was the proper location on the ground of the survey described
   in plaintiff's petition and muniments of title, which question is
   purely one of fact for the jury.

3. EJECTMENT—*Plaintiff Tracing Title to Commonwealth or Common Grant-
   or—Jury Warranted in Presuming a Grant.*—The general rule is that
   a plaintiff in ejectment must recover on the strength of his own
   title, and, when he relies solely on his paper title, must trace it
   either from the Commonwealth or other common grantor, but he

is not required to do this when he shows such a state of facts as will warrant the jury in presuming a grant.

4. EJECTMENT—*Prior Peaceful Possession by Plaintiff—Prima Facie Evidence of Ownership.*—The prior peaceful possession by a plaintiff in ejectment or those under whom he holds, claiming to be the owner in fee, if proved, is *prima facie* evidence of ownership and *seisin* and is sufficient to authorize recovery unless the defendant shows a better title in himself or another.

5. EJECTMENT—*Outstanding Title—Present, Subsisting Legal Title.*—An outstanding title, sufficient to defeat a recovery in an action of ejectment, must be a present, subsisting, and operative legal title, upon which the owner could recover if asserting it by action.

6. EJECTMENT—*Plaintiff Tracing Title to Commonwealth or Common Grantor—Proof of Actual Possession—Grant from Some One who Held Possession.*—In ejectment, when one proves a perfect chain of paper title from its original source, no proof of actual possession at all is required. In such event the presumption would be all sufficient, and the title would be a complete and perfect title, but when this is not done, a title *prima facie* is shown by a grant from some one who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by anyone who, at the time the objection is made, appears to be a mere stranger to the title, such a *prima facie* title would seem quite sufficient. If the objector has a better or stronger title than the *prima facie* title proved, then he must show it, and until he does the *prima facie* title prevails.

7. BOUNDARIES—*Proceeding to Ascertain Boundaries—Title of Plaintiff—Tracing Title to Commonwealth or Common Grantor—Where one of Plaintiff's Predecessors Took Actual Possession of the Land—Case at Bar.*—In the instant case, a proceeding to determine the boundary line between plaintiff and defendant under section 5490 of the Code of 1919, one of plaintiff's predecessors in title took actual possession of the land claimed by plaintiff in its petition and cut and removed the large timber thereon. Plaintiff and its predecessors held possession of the land for over fifty years under their muniments of title.

*Held:* That this vested in plaintiff such a *prima facie* title to the land as would entitle it to recover against the defendant in an action of ejectment, even though plaintiff had been out of possession at the time of the institution of such action; and that it was not incumbent upon plaintiff under the circumstances to establish a perfect legal title to the land described in its petition by connecting it with a grant from the Commonwealth.

8. EJECTMENT—*Distinguished from a Proceeding to Ascertain Boundary Lines Under Section 5490 of the Code of 1919—Plaintiff in Possession.*—An important distinction exists between a proceeding to

establish a boundary line and an action of ejectment, in that an action of ejectment will not lie when the plaintiff is in possession, whereas a proceeding to establish a boundary line may be brought whether the plaintiff is in possession or not. They are, therefore, not co-extensive in that respect.

9. BOUNDARIES—*Proceeding to Ascertain Boundary Lines Under Section 5490 of the Code of 1919—Plaintiff's Title—Outstanding Title—Case at Bar.*—In the instant case, a proceeding to determine the boundary line between plaintiff and defendant, defendant failed to show a present and subsisting outstanding title in himself or any other person to any of the land lying within the boundaries claimed by the plaintiff and established by the jury. He was in fact a mere stranger to the title.

*Held:* That a *prima facie* title shown by the plaintiff was all that could be required against defendant, a coterminous landowner, who has neither possession, nor has made any pretense of showing an outstanding title in himself or any other person to the land found by the jury to be embraced in the description given by plaintiff's deed.

10. BOUNDARIES—*Proceeding to Ascertain Boundary Lines between Plaintiff and Defendant Under Section 5490 of the Code of 1919—Defendant a Stranger to the Title—Burden of Proof—Case at Bar.*—While in a proceeding to establish the boundary line between plaintiff and defendant the burden was upon the plaintiff to establish the boundary line between the two tracts to the satisfaction of the jury, the defendant, a mere stranger in title to the tract, according to the principles of ejectment, could call upon the plaintiff to prove a perfect chain of title in order to have its boundary line established, and had no right to have the verdict of the jury avoided because of its failure to establish such a title.

11. BOUNDARIES—*Proceeding to Establish Boundaries Under Section 5490 of the Code of 1919—Sufficiency of the Evidence to Establish True Location—Report of Surveyors Appointed by the Court—Discrepancy in Acreage—Case at Bar.*—In the instant case under the evidence the jury were justified in finding that the true location of the boundary line between plaintiff and defendant was that established by a survey made by surveyors appointed by the court at the request of both parties, who had several conceded monuments to guide them in their work. The evidence adduced by the defendant in an attempt to prove that the boundary line fixed by the surveyors was not the true one and to set up a line of his own, was too uncertain and self-contradictory to constitute any substantial conflict with the evidence given by the surveyors, or to have been given serious consideration by the jury. The mere fact that the deed to plaintiff's predecessor described the tract as containing 600 acres, whereas the survey made under the direction of the court found it to con-

tain 535 acres is not of itself sufficient to prove that the boundary established by the surveyors appointed by the court was incorrect.

12. BOUNDARIES—*Proceeding Under Section 5490 of the Code of 1919—Survey by Surveyors Appointed by the Court—Less Acreage than that Called for by Deed to Plaintiff's Predecessor—Verdict for Plaintiff—Case at Bar.*—In the instant case, a proceeding to establish the boundary between defendant and plaintiff, the court at the request of both parties appointed surveyors to locate the line. The survey of the surveyors showed that there was less acreage in plaintiff's tract than that called for in the deed to plaintiff's predecessor; but the defendant was not prejudiced by this fact. The most that can be said of it is that it was a circumstance to be considered by the jury along with all the other evidence in the case, and the jury having found the line established by the surveyors to be the correct one, and there being sufficient evidence to support it, their verdict is conclusive.

13. BOUNDARIES—*Acreage as Evidence of Location—Lines Located in Accordance with the Calls.*—The acreage called for by the title papers, while a circumstance to be considered in identifying the land, is the least reliable of all the evidence of its true location. Where the boundary lines called for in the writings evidencing the title are located on the ground in accordance with such calls, those lines fix the location of the land, irrespective of the acreage called for in such writings.

14. *Boundaries—Evidence—Invalid Deeds.*—Though a deed may be invalid to pass the title it purports to convey, it is admissible in evidence as a link in plaintiff's chain of title, to show the bounds of the land claimed by him, and the extent of his possession.

15. BOUNDARIES—*Proceeding to Establish Boundaries Under Section 5490 of the Code of 1919—Admissibility of Deed of Commissioner—Case at Bar.*—In the instant case, a proceeding to establish the boundary between plaintiff and defendant, defendant objected to the admission of a deed from a commissioner to plaintiff's predecessor in title, containing the survey relied on by plaintiff to establish the boundary referred to in the subsequent conveyances in plaintiff's chain of title. This deed was claimed to be invalid to pass a title because it did not state in what district, county or State the land is situated, and also on the ground that there was no evidence to show that the commissioner complied with the decree of sale. The deed described the land therein conveyed as adjoining the lands of certain other persons, among those named being defendant's predecessor in title, and this description, taken in connection with the monuments and points called for in the field notes of the survey therein set out, was amply sufficient to identify the land as the same tract conveyed by the subsequent deeds going to make up plaintiff's chain of title.

    *Held:* That the deed contained all the essential recitals to bring it within the purview of section 6196 of the Code of 1919, and that it was admissible.

16. BOUNDARIES—*Proceeding to Ascertain Boundary Under Section 5490 of the Code of 1919—Verdict Finding that the Correct Line was the Line Established by Surveyors Appointed by the Court—Failure to Find for Plaintiff or Defendant.*—In the instant case, a boundary proceeding to establish the boundary line between plaintiff and defendant, the jury failed in terms to find for the plaintiff or defendant, but found that the correct line was the line established by surveyors appointed by the court as shown by the survey map.

    *Held:* That this verdict was not a nullity, but was sufficiently responsive to the issue and sufficiently certain to have enabled the court to enter a judgment fixing the boundary line between the coterminous lands of the parties in accordance with its meaning and effect.

17. VERDICT—*Sufficiency.*—When the meaning of the jury can be clearly collected from the verdict it ought not to be set aside for want of form in its wording.

18. EJECTMENT—*Verdict—Reference to Plat of Surveyor.*—A verdict in ejectment describing the land found for the plaintiff by reference to the plat of the surveyor filed in the cause, and giving metes and bounds by reference to the plat, sufficiently describes the land.

19. BOUNDARIES—*Proceeding Under Section 5490 of the Code of 1919, to Establish Boundary between Plaintiff and Defendant—General Verdict—Case at Bar.*—In the instant case, a proceeding to establish a boundary line between plaintiff and defendant under section 5490 of the Code of 1919, taking the most favorable view of the evidence from defendant's standpoint it is possible to take, he could have been entitled, by virtue of the boundary line he undertook to establish, and his own title papers, to only forty-five acres of the land claimed in plaintiff's petition. Therefore, it was error for the lower court to set aside the verdict for the plaintiff and enter a general judgment for the defendant. If it was proper to set aside the verdict because the boundary line found by the jury was wrong, the court should have either established by its judgment the alternative boundary claimed by the defendant, or else have granted a new trial.

20. APPEAL AND ERROR—*Cross Errors Assigned Under Rule VIII of the Supreme Court of Appeals—Correction of Errors Against the Defendant in Error—Moot Questions.*—Rule VIII of the Supreme Court of Appeals is designed for the correction of errors against the defendant in error (or appellee) when some affirmative relief is sought on appeal by way of reversal, modification or correction of the judgment under review. Where defendant in error makes no motion for a new trial and seeks no relief in the appellate court, cross assign-

ments of error to certain instructions given or refused by the lower court present moot questions.

Error to a judgment of the Circuit Court of Brunswick county in a proceeding to establish a boundary under section 5490 of the Code of 1919. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*Nat Turnbull, Irby Turnbull* and *L. J. Hammack*, for the plaintiff in error.

*Bulford & Raney*, for the defendants in error.

Chinn, J., delivered the opinion of the court.

On June 6, 1922, Brunswick Land Corporation filed its petition in the court below against C. H. Perkinson and Irene M. Perkinson, his wife, asking that the true boundary line between the coterminous lands of the respective parties be ascertained and established by the court pursuant to the provisions of section 5490 of the Code.

The petition alleges that petitioner is the owner in fee simple of a tract of land containing 511 2/5 acres, acquired by deed from W. T. Harding and wife, dated March 19, 1919, being the same tract of land which was conveyed to one Hiram Bingham by deed from Thos. W. Goodrich, commissioner, dated December 22, 1870, and designated and described by the metes and bounds, courses and distances of a survey set forth in said deed. The petition sets out the intermediate conveyances relied on to make up the chain of title between Bingham

and Harding, and also the descriptive survey of the land as contained in the said deed from Goodrich, commissioner, to Bingham.

The petition also alleges that the defendant, C. H. Perkinson, is the owner of a tract of land, acquired by deed from W. W. Doyle and wife on April 5, 1919, which adjoins the above described land of petitioner on the western side thereof, and that a dispute had arisen between said Perkinson and petitioner as to the correct boundary line between their respective tracts. In the written grounds of defense filed by defendants in answer to the petition, Mrs. Perkinson disclaimed any interest except a contingent right of dower in such land as her husband may own; the other grounds of defense being stated as follows:

"2. The defendant, C. H. Perkinson, says that he denies that the plaintiff has ever had possession of the land claimed by it in said petition and he further denies that the plaintiff has any valid legal title to the land claimed by it in said petition.

"3. The said C. H. Perkinson further says that he is not guilty of having entered upon, or of unlawfully withholding from the plaintiff, any of the land mentioned in said petition to which the said plaintiff has any valid legal title."

On June 29, 1922, the court entered the following order:

"This day came the plaintiff, Brunswick Land Corporation, as well as the defendants, C. H. Perkinson and Irene M. Perkinson, his wife, by counsel, and jointly moved the court to order a survey of the tracts of land in dispute in these proceedings in order to establish the true boundary lines in accordance with the deeds set out in the petition and the grounds of defense.

"On consideration whereof the court being advised

from the pleadings filed in this case and from the joint motion of the plaintiff and defendants in this case that a survey of said disputed boundary line is necessary, doth adjudge and order that W. T. Drummond and W. C. Rives, surveyors, do forthwith go upon the said tracts of land and establish the true boundary line between the Bingham tract of land owned by the plaintiff, Brunswick Land Corporation, which was conveyed, to the said Brunswick Land Corporation by deed of W. T. Harding and wife dated March 19, 1919, and of record in the clerk's office of Brunswick county, Virginia, in Deed Book 71 at page 293 as set out in the petition in this case, and that portion of the Spencer tract now owned by the defendant, C. H. Perkinson, which was conveyed to the said C. H. Perkinson by deed of W. W. Doyle and wife dated April 5, 1919, and of record in the clerk's office of Brunswick county, Virginia, in Deed Book 71 at page 339; and that the said surveyors do cause a map of said tracts of land in dispute to be made, showing the true boundary lines, and report to this court at the next term thereof, together with the maps."

On September 5, 1922, the surveyors appointed by the court returned the following report:

"Agreeably to an order issued at your June, 1922, term in the suit of the *Brunswick Land Corporation,* *plaintiff,* v. *C. H. Perkinson and Irene M. Perkinson,* *his wife, defendants:*

"We, the undersigned surveyors, appointed under said order, have gone upon the property and established the line mentioned and described in said order, and herewith return a plat showing the said line and the property known as the Bingham tract and owned by the Brunswick Land Corporation, also that portion of the Spencer tract adjoining the said Bingham tract, and

owned by the said C. H. Perkinson and Irene M. Perkinson, same to be attached hereto and made a part of this report as ordered by your Honor in said proceedings.

"Respectfully submitted, and signed by us this 2nd day of September, 1922.

"W. T. DRUMMOND,
"W. C. RIVES, Surveyors."

At a subsequent term of the court a jury was empanelled to try the case, who returned the following verdict:

"We, the jury, agree that the correct lines of the Bingham tract is the lines established by W. T. Drummond and W. C. Rives, surveyors, as shown by map dated August, 1922."

The defendant, Perkinson, thereupon moved the court to set aside the verdict, and enter judgment in his favor upon the following grounds:

"1. For errors in the admission and exclusion of evidence.

"2. For errors in instructions given the jury by the court *ex mero motu*, and at the request of the plaintiff, and in refusing and amending instructions requested by the plaintiff.

"3. Because the verdict is contrary to the law and the evidence, and is without evidence to support it.

"4. That said verdict is not responsive to the issue, has no legal significance, and cannot be made the basis of a judgment."

Upon this motion the court "set aside and annulled" the verdict of the jury, and "being of the opinion that there is sufficient evidence before the court to enable it to decide the case upon the merits," entered final judgment for the defendant, Perkinson.

The Brunswick Land Corporation is now here complaining of this action on the part of the trial court.

The parties will hereinafter be referred to according to their respective positions in the court below.

It appears that at the trial of the case the plaintiff only undertook to trace its title to the land claimed in the petition back to the deed of December 22, 1870, from Thos. W. Goodrich, commissioner, to Hiram Bingham, and it is contended by the defendant that the court was justified in setting aside the verdict and entering judgment in his favor for the reason that the law requires the plaintiff in a proceeding of this sort to prove a complete chain of title to a grant from the Commonwealth, or to a common source, as in an action of ejectment.

[1] It seems to be now well settled that when, in a proceeding under the statute to establish a boundary line the title and right of possession of the coterminous owners is brought into dispute by the pleadings, the same principles of law are applicable as would be applicable to the same subject in an action of ejectment. *Bradshaw* v. *Booth*, 129 Va. 19, 105 S. E. 555; *Griggs* v. *Brown*, 126 Va. 556, 102 S. E. 212; *Christian* v. *Bulbeck*, 120 Va. 74, 90 S. E. 661. It, therefore, remains to be seen to what extent, if any, the rules applying to the recovery of land in an action of ejectment apply to and control the case now under consideration.

The evidence in this case shows that the tract of land, mentioned and described in plaintiff's petition, consists entirely of timber land, no part of which had been improved or actually occupied by the plaintiff or any of its predecessors in title, but the evidence is undisputed that from the time of the said conveyance to Hiram Bingham until this controversy arose the owners in title to this land, which was commonly known as the

Bingham tract, paid the taxes on the same, claimed it as their own, cut timber from it from time to time, at will, and that the land was recognized without dispute from any source as belonging to the record owners thereof.  During this period the Bingham tract changed hands a number of times, being bought and sold chiefly on account of its timber rights, and one of plaintiff's predecessors in title, Peart, Nields & McCormick, who owned and held said tract of land from 1896 until 1914, took actual possession of the same to the extent of cutting and removing therefrom all the original growth of timber then standing thereon.  After plaintiff acquired the property from Harding and wife in the year 1919, it exercised ownership over it by claiming the same under its recorded deed, going upon it from time to time for the purpose of examining the timber or showing it to prospective purchasers, paying the taxes, and performing such other acts as are usually incident to the ownership of unoccupied timber land.  After receiving a deed for the property plaintiff also blazed the boundary line it claimed between this tract and defendant's.  The land owned by the defendant, which is timber land of the same general description as plaintiff's Bingham tract, and coterminous with the western boundary thereof, was acquired by defendant by the aforesaid deed from W. W. Doyle and wife, dated April 5, 1919, and is designated in said deed, and also generally known, as a part of the D. W. Spencer farm.  Defendant traced his title to this land back to 1835, when it was conveyed, as a part of a larger tract, to D. W. Spencer by deed from Richard K. Eldridge and wife. So far as disclosed no survey was ever made of the Spencer land now owned by the defendant, all of the deeds exhibited with defendant's chain of title merely describing it as bounded by or adjoining certain other

23

tracts of land mentioned in said deeds, among them being the Bingham tract, now claimed by the plaintiff and described in the petition.

It appears that soon after he purchased the Spencer tract, defendant undertook to cut the timber standing thereon, and during those operations cut a quantity of pine and railroad ties from about forty-five acres which the plaintiff claims to be a part of the Bingham tract and within the boundaries called for in its deed. Defendant testified that he did not know the boundary line between plaintiff's land and his own, and being unable to find any marked trees or monuments designating the boundary, he cut the timber from the forty-five acres of land claimed by the plaintiff, as hereinbefore stated, on information received from a colored man living in the neighborhood who claimed to know the line. It was this action on the part of the defendant that caused plaintiff to institute this proceeding to have the true boundary line between the two tracts established by the court.

[2] Plaintiff's petition does not claim title to any certain location on the ground. It only claims such land as is contained within the survey specifically set forth in its title papers, and asks that the boundary line between defendant's land and its own be located and laid out accordingly. On the other hand the defendant, in his grounds of defense filed as required by the statute, does not claim title to or possession of any part of the land within said survey, nor does he deny that the said survey does not give the true boundary, or that it does not extend to any certain location on the ground, or set up any other boundary. He merely denies that the plaintiff has possession of or a valid legal title to any of the land claimed in its petition, and that he has entered upon or withheld from the plaintiff any land to

which it had a valid legal title. Furthermore, the defendant joined in plaintiff's motion that the court appoint surveyors to establish the boundary line between the two tracts "in accordance with the deeds set out in the petition and the grounds of defense."

It would, therefore, seem that by the pleadings, as well as by consent, the only question presented for determination in this case is the proper location on the ground of the survey described in plaintiff's petition and muniments of title, which question is purely one of fact for the jury.

But however this may be, the evidence shows that defendant was not in possession of any of the land found by the jury to be within plaintiff's boundaries, and that he had no claim or color of title to the same. His title deeds only described his coterminous land as adjoining plaintiff's Bingham tract and he claims no farther under such deeds. There was, therefore, no question of adverse possession, interlocking boundaries, or conflicting paper titles involved in the proceedings. Was it encumbent upon the plaintiff, under the circumstances, to establish a perfect legal title to the land described in its petition by connecting it with a grant from the Commonwealth, as defendant contends?

[3–5] It is true the general rule is that a plaintiff in ejectment must recover on the strength of his own title, and, when he relies solely on his paper title, must trace it either from the Commonwealth or other common grantor, but it is equally well settled that he is not required to do this when he shows such a state of facts as will warrant the jury in presuming a grant. *Sulphur Mines Co.* v. *Thompson,* 93 Va. 293, 25 S. E. 232; *Spriggs* v. *Jamerson,* 115 Va. 250, 78 S. E. 571. And it is also well established that the prior peaceful possession by a plaintiff in ejectment or those under whom he

holds, claiming to be the owner in fee, if proved, is *prima facie* evidence of ownership and *seisin* and is sufficient to authorize recovery unless the defendant shows a better title in himself or another. *Holladay* v. *Moore*, 115 Va. 66, 78 S. E. 551. And "in outstanding title, sufficient to defeat a recovery in an action of ejectment, must be a present, subsisting, and operative legal title, upon which the owner could recover if asserting it by action." *Reusens* v. *Lawson*, 91 Va. 226, 21 S. E. 347; *Holladay* v: *Moore, supra.*

[6] In Ruling Case Law, page 843, the rule is thus stated:

"Of course when one proves a perfect chain of paper title from its original source, no. proof of actual possession at all is required. In such event the presumption would be all sufficient, and the title would be a complete and perfect title, but when this is not done, a title *prima facie* is shown by a grant from some one who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by anyone who, at the time the objection is made, appears to be a mere stranger to the title, such a *prima facie* title would seem quite sufficient. To require more against such an objector would require every one to prove a perfect chain of title as against every stranger making any kind of a claim. This the law does not require. If the objector has a better or stronger title than the *prima facie* title proved, then he must show it, and until he does the *prima facie* title prevails." See *Cottrell* v. *Pickering*, 32 Utah, 62, 88 page 696; 10 L. R. A. (N. S.) 404, and note; *Dodge.* v. *Irvington Land Co.*, 158 Ala. 91, 48 So. 383, 22 L. R. A. (N. S.) 1100, and note.

[7, 8] As heretofore shown, one of the plaintiff's predecessors in title took actual possession of the land

claimed in its petition and cut and removed all the large timber thereon, and we think that fact, coupled with the possession which plaintiff and those whom he claims are shown to have held under their muniments of title since December 1870, vests in the plaintiff such a *prima facie* title to the land as would entitle it to recover against the defendant in an action of ejectment, even though the plaintiff had been out of possession at the time of the institution of such action, and an action of ejectment could have been brought. It should be observed that an important distinction exists between a proceeding to establish a boundary line and an action of ejectment, in that the latter action will not lie when the plaintiff is in possession, whereas the former proceeding may be brought whether the plaintiff is in possession or not. They are, therefore, not co-extensive in that respect.

[9, 10] The defendant has not only failed to show a present and subsisting outstanding title in himself or any other person to any of the land lying within the boundaries claimed by the plaintiff and established by the jury, but he has failed to show any at all. He is in fact a mere stranger to the title, and if the boundary line found by the jury is the correct one, he was a mere trespasser when he cut timber on the land claimed by the plaintiff and embraced within those lines. We, therefore, think it clear that the *prima facie* title shown by the plaintiff is all that can be required of it in this proceeding as against a coterminous landowner, who has neither possession, nor has made any pretense of showing an outstanding title in himself or any other person to the land found by the jury to be embraced in the description given by plaintiff's deed. While the burden was upon the plaintiff to establish the boundary line between the two tracts to the satisfaction of the

jury, the defendant being a mere stranger in title to the Bingham tract, according to the principles of eject-ment, cannot call upon the plaintiff to prove a perfect chain of title in order to have its boundary line estab-lished, and has no right to have the verdict of the jury avoided because of its failure to establish such a title.

[11] It is further contended that the evidence is too vague and uncertain to warrant a conclusion as to the proper location of the boundary line. Without pro-longing this opinion by a recital of the parol evidence in the case, we feel no hesitation in saying that the jury were justified in finding that the true location of the boundary line is that established by the survey made by Drummond and Rives. It appears from their testi-mony that they had several conceded monuments to guide them in their work, made a survey of the entire Bingham tract according to the field notes given in the deed from Goodrich, commissioner, to Hiram Bingham, and appear to have been painstaking and conscientious in the performance of the duties imposed upon them by the court. The evidence adduced by the defendant in an attempt to prove that the boundary line fixed by the surveyors is not the true one and to set up a line of his own, is too uncertain and self-contradictory to con-stitute any substantial conflict with the evidence given by the surveyors, or to have been given serious con-sideration by the jury. The mere fact that the deed to Thomas Bingham describes the tract as containing 600 acres, whereas the survey made under the direction of the court found it to contain only 535 acres is not of itself sufficient to prove that the boundary established by the surveyors between the Bingham and Spencer tracts is incorrect.

[12] The defendant cannot be prejudiced because the survey shows there is less acreage in plaintiff's tract

than called for in the deed to Bingham. The most that can be said of it is, that it was a circumstance to be considered by the jury along with all the other evidence in the case, and the jury having found the line established by the surveyors to be the correct one, and there being sufficient evidence to support it, their verdict is conclusive. *Reusens* v. *Lawson*, 91 Va. 226, 21 S. E. 347; *Whealton* v. *Doughty*, 116 Va. 566, 82 S. E. 94; *Blacksburg Mining Co.* v. *Bell*, 125 Va. 565, 100 S. E. 806; *Mitchell* v. *Williams*, 114 Va. 420, 76 S. E. 949; *Smith* v. *Stanley*, 114 Va. 117, 75 S. E. 742.

[13] "It is well settled that the acreage called for by the title papers, while a circumstance to be considered in identifying the land, is the least reliable of all the evidence of its true location. Where the boundary lines called for in the writings evidencing the title are located on the ground in accordance with such calls, those lines fix the location of the land, irrespective of the acreage called for in such writings." *Sims* v. *Capper*, 133 Va. 278, 289, 112 S. E. 676, 680.

It is also contended that it affirmatively appears that certain deeds introduced in evidence by the plaintiff are ineffectual to convey a legal title to the land claimed in the petition, and the court was warranted in setting aside the verdict for that reason.

[14] As we consider that the plaintiff showed a sufficient *prima facie* title in the possession held under its own deed to entitle it to maintain this action under the circumstances, a discussion of the technical objections offered to the deeds brought into question, so far as this case is concerned, would be purely academic. It may be said, however, that though a deed may be invalid to pass the title it purports to convey, it is admissible in evidence as a link in plaintiff's chain of title, to show the bounds of the land claimed by him, and the

extent of his possession, and even if the deeds referred to were invalid to convey a legal title, they were admissible to be considered by the jury for that purpose. *Olinger* v. *Shepherd*, 12 Gratt. (53 Va.) 462; *Flanagan* v. *Grimmet*, 10 Gratt. (51 Va.) 421; *Blakey* v. *Morris*, 89 Va. 717, 17 S. E. 126.

[15] It might, however, be expedient to refer to the deed from Goodrich, commissioner, to Bingham, for the reason that it contains the survey relied on by plaintiff to establish the boundary referred to in the subsequent conveyances in plaintiff's chain of title. This deed is claimed to be invalid to pass a title because it does not state in what district, county or State the land is situated, and also on the ground that there is no evidence to show that the commissioner complied with the decree of sale. The deed describes the land therein conveyed as adjoining the lands of certain other persons, among those named being D. W. Spencer, and this description taken in connection with the monuments and points called for in the field notes of the survey therein set out, was amply sufficient to identify the land as the same tract conveyed by the subsequent deeds going to make up plaintiff's chain of title.

As to the second objection, to save needless discussion, we will only repeat the language of the court in *Saunders* v. *Terry*, 116 Va. 495, 82 S. E. 68, where the same question was raised; that we think the "deed in question contains all the essential recitals to bring it directly within the purview and control of the statute," now section 6196 of the Code.

[16-18] It is next contended that the verdict is a nullity because it fails in terms to find for the plaintiff. We agree that the usual form of verdict is either for the plaintiff or the defendant, but under the pleadings and proofs in this case we do not think this was essential

to make the verdict a valid one. The statute prescribes that in these cases the "issue shall be the true boundary line or lines of such real estate." The surveyors acting under the order of the court returned with their report a map showing a survey of the entire Bingham tract which clearly and specifically designated the division line between plaintiff's and defendant's coterminous lands in a manner that can leave no uncertainty as to its location, and the verdict referred to that map for a description of the line. The proper location of the line, according to plaintiff's survey, being the only subject of controversy between the parties, and the said line being plainly located and described on the map referred to, we think the verdict was sufficiently responsive to the issue and sufficiently certain to have enabled the court to enter a judgment fixing the boundary line between the coterminous lands of the parties in accordance with its meaning and effect. When the meaning of the jury can be clearly collected from the verdict it ought not to be set aside for want of form in its wording. *Lewis* v. *Childers*, 13 W. Va. 1; *Peters* v. *Johnson*, 50 W. Va. 644, 41 S. E. 190, 57 L. R. A. 428, 88 Am. St. Rep. 909. And a verdict in ejectment describing the land found for the plaintiff by reference to the plat of the surveyor filed in the cause, and giving metes and bounds by reference to the plat, sufficiently describes the land. *Myers* v. *Ford*, 9 W. Va. 184; *Hill* v. *Bell*, 133 Va. 114, 112 S. E. 617.

Before concluding this opinion we deem it proper to say that even though the verdict should, for any reason, have been set aside, in no aspect of the case was defendant entitled to the general judgment entered by the trial court.

[19] Taking the most favorable view of the evidence from defendant's standpoint it is possible to take, he could have been entitled, by virtue of the boundary

line he undertook to establish, and his own title papers, to only forty-five acres of the land claimed in plaintiff's petition and embraced within the survey of Drummond and Rives. If, therefore, it was proper to set aside the verdict because the boundary line found by the jury was wrong, or for any other just and valid reason, the only proper course for the trial court, under the circumstances, was to either establish by its judgment the alternative boundary line claimed by the defendant as the true boundary line, or else have granted a new trial of the issue, according to the ground upon which the verdict was vacated.

[20] Defendant assigns a number of cross errors as to certain instructions either given or refused by the court. In view of the conclusions hereinbefore expressed, we deem it unnecessary to consider these assignments. In the case of *Eastern Coal & Export Corp.* v. *N. & W. Ry. Co.*, 133 Va. 525, 113 S. E. 857, Judge Prentis, in referring to cross errors assigned under rule VIII said: "This rule, under which such assignments are permitted, is designed for the correction of errors against the defendant in error (or appellee) when some affirmative relief is sought here by way of reversal, modification or correction of the judgment under review. As the defendant made no motion for a new trial and seeks no relief here, therefore, these assignments present moot questions, which, however interesting, are academic."

For the reasons hereinbefore stated, we are of the opinion that the judgment of the lower court should be reversed, and the case remanded with directions to enter such judgment as is necessary and proper to establish the true boundary between the coterminous lands of the parties in accordance with the verdict of the jury and the Drummond and Rives plat of survey filed in the proceedings.

*Reversed and remanded.*